■ In the Matter of MELVIN D. UNGAR et al., Respondents, v MATARAZZO BLUMBERG & ASSOCIATES, P. C., et al., Appellants. [688 NYS2d 588] —In a proceeding pursuant to CPLR article 75, *inter alia*, seeking injunctive relief in connection with a pending arbitration proceeding between the parties, Matarazzo Blumberg & Associates, P. C., Craig A. Blumberg, and Barbara A. Matarazzo appeal, as limited by their brief, from so much of an order of the Supreme Court, Kings County (G. Aronin, J.), dated October 30, 1997, as granted that branch of the petition which was to compel discovery in aid of arbitration.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the petition which was to compel discovery is denied.

At the time the appellant law firm, Matarazzo Blumberg & Associates, P. C. (hereinafter MBA), was formed, the parties entered into an agreement pursuant to which the petitioner Melvin D. Ungar was employed as an "Administrator and Claims Manager" for the firm. His compensation was to equal that of the individual appellants, the two attorneys (hereinafter the appellants), who formed the firm. Further, any dividends, earnings and/or profits of MBA paid to the appellants were to be distributed in an equal amount as a "bonus" to Ungar. If Ungar's employment was terminated, he was entitled to a payment equivalent to one-third of the value of MBA, such value to include "the present and future value of any cases held by said firm and/or matters handled by said firm as well as all cash, securities and property on hand". As an example of the manner in which the value of cases would be determined and distributed, the agreement provided that "if the fee is nine (9) dollars, the value of the case would be nine (9) dollars and [Ungar] would receive three dollars". According to the agreement, the amount received by Ungar would not be a portion of the fee, but would only be "equivalent" to such portion. Ungar's estate was entitled to the same benefits upon his death.

The agreement further provided that "no decision as to MBA

and/or its business, finances, employees and/or operation shall be made without the unanimous concurrence" of Ungar and the appellants. Legal decisions concerning the handling of legal matters did not, however, require Ungar's concurrence. Any shareholders agreement was subject to Ungar's approval and no new shareholders/partners would be permitted without his written consent.

Pursuant to the agreement, Ungar and his wife were given the right to examine all the books, records, and files of MBA. The agreement requires any disputes between the parties to be resolved by arbitration.

On or about October 25, 1996, MBA terminated Ungar's employment. Ungar and his wife subsequently demanded arbitration pursuant to the agreement and commenced this CPLR article 75 proceeding, *inter alia*, to compel discovery in aid of arbitration. Specifically, they sought to examine all the books, records, and files of MBA in accordance with the agreement. The Supreme Court granted that branch of the petition which was to compel discovery. We reverse.

Upon our review of the terms of the parties' agreement, we conclude that it is an agreement between a nonlawyer and attorneys to split legal fees which is prohibited by Judiciary Law § 491 (*see, Gorman v Grodensky,* 130 Misc 2d 837; *Stern, Henry & Co. v McDermott,* 38 Misc 2d 50, *affd* 19 AD2d 864; *see also,* Code of Professional Responsibility DR 3-102 [22 NYCRR 1200.1]). While this issue was not raised by the parties, we may consider it *sua sponte* (*see, Matter of Niagara Wheatfield Adm'rs Assn. [Niagara Wheatfield Cent. School Dist.],* 44 NY2d 68, 72; *Matter of Town of Greenburgh [Police Assn.],* 94 AD2d 771, 772; *Muscarella v Muscarella,* 93 AD2d 993, 994).

Regardless of the terminology which purports to save the agreement by labeling the payments to Ungar as compensation and bonuses, the agreement, in essence, provides that Ungar and the appellants will share equally in the profits of the firm, which, under the circumstances, constitutes illegal fee-splitting (*see, United Calendar Mfg. Corp. v Tsung C. Huang,* 94 AD2d 176; *Gorman v Grodensky, supra*). In particular, the termination and death benefits are explicitly calculated, in part, as a percentage of the fees earned.

A party may not seek the assistance of the courts in enforcing an illegal contract (*see, United Calendar Mfg. Corp. v Tsung C. Huang, supra,* at 180). Consequently, we decline to compel the discovery sought by the petitioners pursuant to the terms of the agreement. S. Miller, J. P., Ritter, Altman and Goldstein, JJ., concur.